Matthias, J.
The single question raised by these appeals is whether a preferred-stock dividend issued on a share-for-share basis on common stock, coupled with a simultaneous transfer from earned surplus to the capital account of an amount equal to the declared value of such preferred stock, constitutes *6 income yield within the meaning of the Ohio Intangible Tax Act.
The Ohio Intangible Tax Act so far as it relates to the particular question presently before us reads as follows:
“Annual taxes are hereby levied on the kinds of intangible property, enumerated in this section, on the intangible property tax list in the office of the Auditor of State and the duplicate thereof in the office of Treasurer of State at the following rates:
“(A) On investments, five per cent of income yield or of income as provided by Section 5711.10 of the Revised Code
“Income yield,” as it relates to shares of stock, is defined in Section 5701.10, Revised Code, as follows:
“As used in Title LYII of the Revised Code, ‘income yield’ means the aggregate amount paid as income by the obligor, trustee, or other source of payment to the owner or holder of an investment, whether including the taxpayer or not, during such year, and includes the following:
i C * # #
“ (B) In the case of shares of stock, the dividends so paid or distributed, other than distributions in liquidation and distributions by an investment company of a gain it realizes on the sale of real property- or investments, whether such payment or distribution is in cash, notes, debentures, bonds, other property, or shares of stock, except stock of like kind of the corporation declaring the dividend * * (Emphasis added.)
These sections levy a tax on stock, measured by its yield. So far as stocks are concerned, income yield is defined as. the aggregate amount paid as income by way of dividends, and it is provided that the .term, dividends, is not confined solely to payments in cash but includes distributions by way of notes, debentures, bonds, other property, or shares of stock except stock of like kind of the corporation declaring the dividends.
Thus the General Assembly has specifically provided that the dividends paid in stock by a corporation constitute income yield and has excepted from the definition of income yield only such dividends as are distributions in liquidation, distributions by an investment company of a gain it realizes on the sale of real property or investments and distributions of stock of like kind of the corporation declaring the dividends.
Clearly, therefore, it was the intention of the General As *7 sembly to include all stock dividends as income yield except those specifically excepted from the definition of income yield.
Since it is not contended in the present cases that the distribution with which we are concerned is a distribution in liquidation or by an investment company, we are left only with the exception of distributions of like kind. Clearly the distribution in the present case was not a distribution of stock of a like kind. The distribution herein was preferred stock based on common, the two basic kinds of corporate stock. The distribution, therefore, is not excepted on the basis that it was stock of like kind.
The principal contention of the appellants is that the distribution of preferred stock on a share-for-share basis on common stock did not constitute a payment as income. Their argument is that such distribution did not change the proportionate interest in the company, and, therefore, they have nothing that they did not have before the stock dividend.
Appellants base their argument on a theory which is well set forth in Eisner, Collr., v. Macomber, 252 U. S., 189, 64 L. Ed., 521, 40 S. Ct., 189, 9 A. L. R., 1570, in which the court said:
“A ‘stock dividend’ shows that the company’s accumulated profits have been capitalized, instead of distributed to the stockholders or retained as surplus available for distribution in money or in kind should opportunity offer. Far from being a realization of profits of the stockholder, it tends rather to postpone such realization, in that the fund represented by the new stock has been transferred from surplus to capital, and no longer is available for actual distribution.
“The essential and controlling fact is that the stockholder has received nothing out of the company’s assets for his separate use and benefit; on the contrary, every dollar of his original investment, together with whatever accretions and accumulations have resulted from employment of his money and that of the other stockholders in the business of the company, still remains the property of the company, and subject to business risks which may result in wiping out the entire investment. Having regard to the very truth of the matter, to substance and not to form, he has received nothing that answers the definition of income within the meaning of the Sixteenth Amendment. ’ ’
It is appellants’ contention that this principle of law has *8 been followed in Ohio in Millar et al., Admrs., v. Mountcastle, 161 Ohio St., 409, 119 N. E. (2d), 626, 49 A. L. R. (2d), 381, and Marsh v. Peck, Tax Commr., 162 Ohio St., 11, 120 N. E. (2d), 428. However, an examination shows that the problem under consideration in the Millar case was an estate problem, and that, although the Marsh case related to the intangible tax, the problem there involved was a stock split, a distribution of stock of like kind which is clearly excepted under the statute. It must be further noted that those cases in which the above principle has been applied by the United States Supreme Court involved an interpretation of the federal income tax law. What constitutes income under the federal tax laws or the effect of stock distributions in estate matters is not determinative of the issue before us.
A single word may have many different meanings or implications depending on the context in which it is used. As Judge Holmes said in Towne v. Eisner, Collr., 245 U. S., 418, 425, 62 L. Ed., 372, 38 S. Ct., 158:
“But it is not necessarily true that income means the same thing in the Constitution and the act. A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.”
In the cases presently before us we have a statute which defines income yield. It is only with such definition that wo are concerned. The statute specifically defines income yield as including all dividends distributed in stock except stock of a like kind of the corporation making the distribution. It must be remembered that it is the income yield ’which measures the tax on stocks in Ohio. Under this section, it is clear that stock dividends are considered to be income yield of stock unless they are of a like ldnd which are specifically excepted from the definition. Any other interpretation would have the effect of making nugatory that part of Section 5701.10, Revised Code, which provides that dividends include distributions in shares of stock, except those of like kind of the same corporation. The General Assembly specifically made distributions of shares of stock income yield, excepting therefrom only those of a like kind. Clearly, since it specifically excepted those of a like kind from the general definition, it intended to include *9 in such definition those distributions of shares which were not of a like kind.
Appellants urge that the distribution was not paid as income and that the shareholders had nothing after the distribution that they did not have before.
It might be well at this time to consider the difference between a slock split and a stock dividend. Such difference is well set forth in 12 Fletcher on Corporations (Perm. Ed.), Section 54-14.1, in which it is said:
“The essential distinction between a stock dividend and a stock split is that in the former there is a capitalization of earnings or profits together with a distribution of the added shares which evidence the assets transferred to capital, while in the latter there is a mere increase in the number of shares which evidence ownership without altering the amount of capital or surplus. The effect of the stock dividend is to capitalize earned or other surplus, according to the required amount of capital to be represented by the new issue of shares. This capitalization of surplus is regarded as the payment for the new shares which are issued by way of a dividend. In the case of a share split-up, however, the legal capital is not thereby changed, although the directors may at any time adopt a resolution transferring surplus to capital.”
It is quite apparent from such statement that advantages do accrue to a corporation under a stock dividend. However, the most succinct and informative description of the purpose and effect of a corporate operation as the one presently before us was made by Judge Brandéis in his dissenting opinion in Eisner v. Macomber, supra, wherein he said, at page 220:
“Financiers, with the aid of lawyers, devised long ago two different methods by which a corporation can, without increasing its indebtedness, keep for corporate purposes accumulated profits, and yet, in effect, distribute these profits among its stockholders. One method is a simple one. The capital stock is increased; the new stock is paid up with the accumulated profits; and the new shares of paid-up stock are then distributed among the stockholders pro rata as a dividend. If the stockholder prefers ready money lo increasing his holding of the stock in the company, he sells the new stock received as a dividend. The other method is slightly more complicated. Ar *10 rangements are made for an increase of stock to be offered to stockholders pro rata at par and, at the same time, for the payment of a cash dividend equal to the amount which the stockholder will be required to pay to the company, if he avails himself of the right to subscribe for his pro rata of the new stock. If the stockholder takes the new stock, as is expected, he may endorse the dividend check received to the corporation and thus pay for the new stock. In order to ensure that all the new stock so offered will be taken, the price at which it is offered is fixed far below’ what it is believed will be its market value. If the stockholder prefers ready money to an increase of his holdings of stock, he may sell his right to take new stock pro rata, which is evidenced by an assignable instrument. In that event the purchaser of the rights repays to the corporation, as the subscription price of the new stock, an amount equal to that which it had paid as a cash dividend to the stockholder.”
Thus, the corporation now has changed its capital structure by increasing its stated capital, removing funds from earned surplus which might have been available for dividend distribution and placing them in its capital account. The shareholders now in addition, to their common stock have shares of preferred stock which they may sell on the market or retain and so increase their capital holdings. The shareholders now have stock which gives them a preference as to dividends and preferred rights on the ultimate liquidation of the corporation. Income is a matter of substance not of nomenclature. Clearly, both the corporation and the shareholders now have something that each did not have prior to this distribution of preferred stock, and in addition thereto the stockholder has lost something, i. e., the acrued earned surplus is no longer available for distribution as dividends.
A consideration of the above matters makes it readily apparent that a distribution of a stock dividend in the form of preferred stock based on common stock constitutes income yield within the meaning of the Ohio Intangible Tax Act.
The appellants urge further that the interpretation placed by the Tax Commissioner on Section 5701.10, Révised Code, represents an unreasonable classification and deprives them of the equal protection of the law, since if the distribution had been made as a stock split and recapitalization there would have been no tax,
*11 There is no 'question that the General Assembly may make a reasonable classification in enacting legislation, including classifications in tax statutes.
Here a distinction has been drawn between different types of corporate distributions having different ultimate results as shown above. We cannot say under such circumstances that there is an unreasonable classification or a violation of the equal protection provision of the Constitution.
The decision of the Board of Tax Appeals, being neither unreasonable nor unlawful, is affirmed.

Decision affirmed.

Weygandt, C. J., Zimmerman, Bell and Herbert, JJ., concur.
Taft and O’Neill, JJ., dissent.